(54 P.3d 532)
No. 87,682

CITY OF HUTCHINSON, *Appellant,* v. ROBERT DAVENPORT, *Appellee.*

—

Opinion filed September 27, 2002.

*Michael C. Robinson,* of Reynolds, Forker, Berkley, Suter, Rose & Graber, of Hutchinson, for appellant.

*James S. Oswalt,* of Hutchinson, for appellee.

Before GREEN, P.J., WAHL, S.J., and JOHN J. BUKATY, JR., District Judge, assigned.

BUKATY, J.: Robert Davenport was found guilty of driving under the influence in the municipal court of Hutchinson. He appealed to the district court of Reno County. That court sustained his motion to suppress certain evidence. The City of Hutchinson (City) filed this interlocutory appeal, and the district court continued the trial pending this court's ruling.

The case presents a single question: Was the stop of Davenport by the arresting officer proper under K.S.A. 22-2402? The relevant facts are not in dispute. We are presented with a question of law, and our review is de novo. See *State v. Field*, 252 Kan. 657, 847 P.2d 1280 (1993). We hold that the stop was not proper and that the trial court properly suppressed the evidence.

Davenport went to the Hutchinson Law Enforcement Center (Center) to check on his daughter whom the police had picked up and to locate her vehicle. Lieutenant Randy Henderson allowed Davenport into the office so Davenport could make a telephone call.

Henderson then took Davenport to the Center's basement to view his daughter's vehicle. At that time, the two men were within a few feet of each other and were together for about 5 minutes. Henderson detected the odor of alcohol on Davenport's breath. Henderson mentioned the odor to Davenport and told him not to drive a vehicle. Davenport replied he was walking, not driving, home. Henderson found this strange because Davenport had mentioned that he lived in Wichita.

Henderson had worked for the police department for 25 years. He was trained in detecting people under the influence of alcohol and had made several arrests for DUI.

After Davenport left the building, Henderson watched him from a window. Davenport walked across the street and stood near a building for less than 5 minutes. The lieutenant described Davenport's behavior as "looking around up and down the street, both to the south and specifically to the west." Henderson then saw Davenport get into a pickup truck, start it up, and back it out. He testified that he then called Sergeant David Miller who was in the area.

Henderson told Miller that a man he thought might be intoxicated had just left the station. He also relayed Davenport's earlier statements about walking although he lived in Wichita. Henderson then told Miller of Davenport's location outside.

Henderson testified at the suppression hearing that he believed Davenport was possibly intoxicated. Davenport had neither slurred his words nor had an unsteady gait. His eyes, however, were blood-

shot. Henderson's concern was that Davenport might be involved in an accident and hit someone. He asked Sergeant Miller to check out and determine whether Davenport could safely operate a vehicle.

Henderson also testified Davenport did not commit any traffic infractions while backing out his pickup truck, nor did he back out in an unusual fashion. Henderson soon lost track of Davenport, but in the short time he observed him driving, Henderson noted that Davenport did not drive in an unusual manner.

Miller testified he, too, knew how to recognize people under the influence of alcohol. Upon his arrival, Miller observed Davenport walk over to a building, stand there for 3 to 5 minutes, and then get into his pickup truck.

Miller testified it looked as if Davenport was waiting for a ride. Other officers left the area, but Miller remained. He saw nothing unusual about Davenport's gait as he watched Davenport walk across the street. He saw Davenport get into his pickup, back out, and drive east. There was also nothing unusual about the way Davenport was driving. Davenport appropriately stopped at a red light, and he proceeded through the intersection when the light turned green. When Miller activated his lights, Davenport pulled over. Davenport provided Miller with his driver's license and insurance "[a]fter a short period of time" and some fumbling.

The City asserts that since the arresting officer believed Davenport was committing a crime, the trial court erred in granting Davenport's motion to suppress. Davenport claims Miller did not have sufficient articulable facts to formulate a reasonable suspicion that Davenport was committing a crime.

In its memorandum opinion, the district court framed the issue as "whether K.S.A. 22-2402 permitted Sergeant David Miller to stop the defendant on the date, time and place in question." The district court then ruled:

"The defendant committed no traffic violation. His driving was not erratic. His speech was not slurred. His gait was normal. There was no threat to the safety of the officer. He was cooperative. There was no reason for Sergeant Miller to stop this man.

"The Court finds that Sergeant Miller did not have specific articulable facts which would reasonably create a suspicion that the defendant had committed, was committing, or was about to commit a crime. Hunches or unparticularized suspicion are not enough. If Lieutenant Henderson had believed [the] defendant was intoxicated, he could have arrested him at the Law Enforcement Center. He did not."

We agree.

K.S.A. 22-2402(1) states: "Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions."

"The stop of a vehicle being driven upon the streets . . . always constitutes a seizure. Therefore, to stop a moving vehicle an officer must have articulable facts sufficient to constitute reasonable suspicion under K.S.A. 22-2402 and *Terry* [*v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct 1868 (1968)]. [Citation omitted.] To stop a vehicle to investigate circumstances which provoke suspicion, an officer must be aware of 'specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion' that the vehicle contains individuals involved in criminal activity. [Citation omitted.]" *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991).

A police officer does not have to know the potential defendant was or is involved in criminal activity. Instead, there must be a showing of some facts which would create suspicion in a reasonable person. *State v. Finley,* 17 Kan. App. 2d 246, 838 P.2d 904, *rev. denied* 251 Kan. 940 (1992). Reasonable suspicion is

" 'a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. . . . Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture" [citation omitted] that must be taken into account when evaluating whether there is reasonable suspicion.' *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S.Ct. 2412 (1990)." *State v. Slater,* 267 Kan. 694, 697, 986 P.2d 1038 (1999).

Although police officers must have more than an inchoate and unparticularized suspicion or hunch, the level of suspicion is much less than a preponderance of the evidence standard. Police officers need only have a minimal level of objective justification to make the stop. *State v. Steen*, 28 Kan. App. 2d 214, 217, 13 P.3d 922 (2000).

Even with the lesser requirements of the reasonable suspicion standard, the trial court properly determined that there were no articulable facts which create a suspicion that Davenport was driving while under the influence or was involved in any other criminal activity. Even if we combine the knowledge of Henderson and Miller, the only facts suggestive of unusual conduct are that Davenport had alcohol on his breath and that he stated he was walking. Neither of these facts by themselves or together create a reasonable suspicion that justified Miller stopping Davenport in the absence of some indication that he was intoxicated and too impaired to drive.

The City cites many cases to bolster its argument that the stop was proper. In each situation where the court found the stop to be proper, however, there were some facts which indicated that the defendant had engaged in some illegal activity prior to being stopped. Here, no such facts exist. Alcohol on one's breath alone does not provide a reasonable suspicion to support a stop, nor does the statement by Davenport that he was walking.

Affirmed.