NOT DESIGNATED FOR PUBLICATION

No. 112,177

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH W. WHERLEY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; PATRICK LEWIS, judge pro tem. Opinion filed January 8, 2016. Reversed and remanded with directions.

*Randy R. McCalla*, of Law Offices of Randy R. McCalla, PA, of Olathe, and *Heather R. Landon*, of Landon Law, LLC, of Olathe, for appellant.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., GARDNER, J., and JOHNSON, S.J.


*Per Curiam*:  Joseph W. Wherley appeals from the district court's denial of his motion to suppress evidence the State obtained after he had been arrested for driving under the influence of alcohol (DUI). Wherley was subsequently convicted of DUI at a bench trial. On appeal Wherley argues, among other things, that the arresting trooper did not have probable cause to arrest him for DUI, rendering evidence obtained postarrest the product of an illegal search. We agree. We therefore reverse and remand with directions

1

to reverse Wherley's DUI conviction, vacate his sentence, and grant his motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

As the result of a traffic stop and subsequent investigation, the State charged Wherley with failure to use a seatbelt, no vehicle registration, and DUI in violation of K.S.A. 2012 Supp. 8-1567. Before trial, Wherley moved to suppress the evidence obtained after his arrest, arguing that the trooper did not have probable cause to arrest him for DUI and that the trooper failed to follow mandated protocols before administering an evidentiary breath test.

The district court conducted a hearing on the motion July 29, 2013. The State called only one witness, Highway Patrol Trooper Ricky Dilks. Trooper Dilks testified that he was the officer who stopped Wherley, arrested him for DUI, and subsequently tested him on an Intoxilyzer 8000. The State, without defense objection, also introduced into evidence a video and audio recording from the trooper's patrol vehicle. The video contained a split view recording of what was visible both in front of the patrol vehicle and behind it. Relevant to this appeal, the audio included the dialogue between Trooper Dilks and Wherley from their initial encounter through the time the trooper placed Wherley under arrest.

The evidence indicated that, at approximately 10 a.m. on October 14, 2012, Trooper Dilks was stopped on the shoulder of westbound K-10 highway in Johnson County. The video showed several vehicles pass the trooper's location. For reasons not inquired about by counsel or explained by Trooper Dilks, the trooper suddenly left the shoulder and accelerated into traffic immediately after a pickup truck (later identified as Wherley's) passed by his location. The trooper quickly matched the pickup's speed and followed it for a considerable distance through a one-lane construction zone. Eventually

2

the road widened to two lanes. Trooper Dilks moved into the inside lane, pulled even with Wherley's vehicle, then dropped back and pulled behind it. The trooper explained that as he was passing Wherley's vehicle he looked over at the truck next to him and observed that the driver was not wearing a seatbelt. Trooper Dilks said he then initiated a traffic stop. The trooper emphasized that the truck took longer than normal to come to a complete stop. Trooper Dilks also acknowledged that, at the time he activated his emergency lights, the vehicles were passing an entry ramp onto K-10 and that Wherley pulled his vehicle over soon after clearing the entry ramp area and reaching the shoulder of the highway.

After the vehicle stopped, Trooper Dilks approached the vehicle and made contact with the driver. The driver identified himself as Wherley and produced a Kansas driver's license. Wherley had no problem handing Trooper Dilks his driver's license. However, Wherley had some difficulty producing his proof of insurance and "began fumbling through paperwork trying to locate an insurance card." Trooper Dilks also observed:

> "I had—as I was making contact with him, I noticed a strong odor of an alcoholic beverage coming from his breath. I did observe an insurance card . . . in plain view in the center console. I mentioned that to him, and he still kind of fumbled around trying to locate it."

After some delay Wherley provided the trooper his insurance card. The trooper asked Wherley if he had been drinking. Wherley admitted only that he had done so the previous night.

Trooper Dilks confirmed that during the time he followed Wherley he saw no traffic violations. He acknowledged that Wherley's driving was fine. Trooper Dilks maintained that the only reason he stopped Wherley was because he noticed Wherley was not wearing his seatbelt.

3

Based primarily on the strong odor of alcohol coming from Wherley's breath, Trooper Dilks asked Wherley to exit his vehicle so the trooper could administer certain standardized field sobriety tests (SFSTs). The trooper agreed that Wherley exited his vehicle as directed with no difficulties and that he displayed no obvious balance problems. The trooper further acknowledged that Wherley did not slur his words, have difficulty communicating, nor did he fall down while performing the tests. The trooper did not indicate that Wherley's eyes were bloodshot or watery.

Trooper Dilks testified regarding the three tests he administered in the field: the walk-and-turn test, the one-leg-stand test, and the preliminary breath test (PBT). He did not comment on the horizontal or vertical gaze nystagmus (HGN or VGN) tests the video showed he also administered. The trooper contended that Wherley exhibited two clues of alcohol impairment during the walk-and-turn test: He lifted his arms away from his body to maintain his balance and he made an improper turn by taking one large step rather than a series of small ones. He asserted that Wherley exhibited three clues during the one-leg-stand test: He put his foot down before 30 seconds had elapsed, he lifted his arms away from his body to balance, and he was drastically swaying. Trooper Dilks concluded that, from these test failures, Wherley was impaired. He then administered the PBT, which Wherley failed. The trooper arrested Wherley for DUI. Eventually Wherley submitted to an evidentiary breath test. The Intoxilyzer 8000 test result indicated a breath-alcohol content (BAC) greater than .08.

The State argued that its evidence demonstrated that the trooper had probable cause to arrest Wherley for DUI, the PBT was appropriately administered, and the protocols for the administration of the Intoxilyzer 8000 breath test were observed. Wherley argued that the trooper falsely or incorrectly attributed clues to Wherley's field tests that were not actually present and, thus, Wherley did not fail those tests. He also argued that the trooper incorrectly administered the PBT and the evidentiary breath test. Relevant here, Wherley then argued that without evidence that he had failed the SFSTs

4

and the PBT, the totality of the circumstances militated against a finding of probable cause to arrest at the time Wherley was arrested.

The district court announced some preliminary findings at the close of the hearing, although it left open for briefing the issues regarding the admissibility of the PBT and Intoxilyzer results. The district court noted that the trooper's initial perception of the odor of alcohol from Wherley's breath supported probable cause, as did Wherley's acknowledgement that he had consumed alcohol the previous night and Wherley's fumbling to produce his insurance card. The district court was persuaded that Wherley was somewhat slow, as the trooper claimed, in pulling over after the trooper activated his emergency lights. However, the district court also acknowledged that Wherley pulled over just after clearing the entry ramp, so the pulling-over factor made up only "a little tiny bit" of the district court's totality of the circumstances analysis.

Regarding Wherley's performance on the walk-and-turn test on the video, the district court determined that contrary to Trooper Dilks' contention Wherley never raised his arms any distance from his body. The only clue of impairment was the improper turn. Regarding the one-leg-stand test, the district court noted that Wherley put his foot down after 27 or 28 seconds rather than the 30 seconds required to pass the test. The district court indicated that this was a minimal failure but it nonetheless constituted a clue. However, the district court did not detect the arm raising the trooper alleged. Nor did the district court detect that Wherley swayed, let alone swayed drastically; but it acknowledged that the trooper was at the scene and it gave "some deference to the officer who was there and [saw] it from a different angle." The district court mentioned its disappointment with the trooper for failing to accurately describe the weather conditions, for failing to know the distances one must raise one's hands for balance or must sway in order to constitute a clue indicating impairment, and for failing to know the protocols for administering the PBT. The district court deferred its final rulings on the suppression issues to allow the parties' time to brief the PBT admissibility issues.

5

The district court announced its decision on the suppression motion August 23, 2013. The trial court held that the results of the PBT could not be used as part of the determination of whether Trooper Dilks had probable cause to arrest. The State did not cross-appeal from that holding. Regarding probable cause to arrest, the trial judge noted that "this is a stunningly close call in my mind." The trial court reiterated the findings it made at the close of the evidence and stated the weight it chose to give those findings. The trial court again found it troubling that Trooper Dilks was unable to answer questions about the protocols applicable to the various tests he conducted and restated its concerns as to the trooper's credibility. The judge concluded, though, that the State had met its burden of proof on the issue of probable cause to arrest Wherley for DUI:

> "I think given the totality of circumstances, given that we're talking merely a probable cause standard, that it comes down to that the officer had probable cause to arrest. But it really is about as close as it could be. If you knocked out any of those other factors, I don't think you would have had probable cause to arrest on this case."

After a bench trial, the district court convicted Wherley of failing to wear a seatbelt and DUI. The court dismissed the charge of no vehicle registration. Wherley timely appeals from the trial court's denial of his motion to suppress.

ANALYSIS

Wherley contends that the district court erred in denying his motion to suppress. He first argues Trooper Dilks lacked probable cause to arrest him for DUI. Because we agree, we do not reach Wherley's other challenges.

The standard of review of a trial court's decision on a motion to suppress is bifurcated. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the

6

appellate court does not reweigh the evidence or assess the credibility of the witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

To be lawful, a warrantless arrest, as Wherley's was, must be supported by probable cause. See K.S.A. 22-2401(c); *State v. Ramirez*, 278 Kan. 402, 405, 100 P.3d 94 (2004). Our Supreme Court restated the meaning of probable cause in *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012). Probable cause is

> "'the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004). Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest. *Bruch* [*v. Kansas Dept. of Revenue*], 282 Kan. [764,] 775-76[, 148 P.3d 538 (2006)]. Probable cause is determined by evaluating the totality of the circumstances. *State v. Hill*, 281 Kan. 136, 146, 130 P.3d 1 (2006). As in other totality of the circumstances tests, there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other. *State v. McGinnis*, 290 Kan. 547, 552-53, 233 P.3d 246 (2010); see *Smith* [*v. Kansas Dept. of Revenue*], 291 Kan. [510,] at 515[, 242 P.3d 1179 (2010)] (holding that the defendant's list of facts did not negate the other factors presented)." *Sloop*, 296 Kan. at 20 (quoting *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 656-57, 256 P.3d 845 [2011]).

As noted above and summarized now, the district court determined that the following facts supported a finding of probable cause:

• Wherley was slow to stop his vehicle after Trooper Dilks activated his emergency lights.
  • Trooper Dilks smelled the odor of alcohol on Wherley's breath.
  • Wherley admitted to drinking the previous night.
  • Wherley had trouble locating his insurance card.
  • Wherley exhibited a clue on the walk-and-turn test (he turned incorrectly).

7

• Wherley exhibited one or, perhaps, two clues on the one-leg-stand test (he dropped his foot 28 seconds into the 30-second test and the trooper said he swayed).

However, in announcing its decision the district court itself recognized weaknesses in each of those facts:

(1) The trial court noted that there was high traffic and construction on the highway, and "there was a reasonable understanding" why Wherley had waited to pull over until he cleared the entry ramp and could stop on the shoulder;

(2) Although Trooper Dilks noted the odor of alcohol on Wherley's breath, the trial court recognized that an odor of alcohol only indicates that one had consumed alcohol, not that one is DUI. (See *City of Hutchinson v. Davenport*, 30 Kan. App. 2d 1097, 1100-01, 54 P.3d 532 [2002]:  The odor of alcohol has been insufficient to create reasonable suspicion for a stop and detention, much less for probable cause to arrest.);

(3) Wherley admitted to drinking alcohol the night before, but the State did not admit evidence at the motion to suppress that indicated how much he drank. Wherley claimed he stopped drinking about 9 hours before his arrest;

(4) Although Wherley had some difficulty in locating his insurance card even after Trooper Dilks pointed out the card in Wherley's center console, he was able to produce the card within a minute after the request was made. Trooper Dilks testified that it would not be unusual for someone to be nervous in this situation;

(5) Wherley only demonstrated only one clue on the walk-and-turn test. The court noted that the trooper said one clue did not make a test failure. Nevertheless, the district court stated that just one clue was "still a sign of intoxication; therefore can be used in determining the totality of the circumstances as to whether or not probable cause existed for arrest.'

(6) Likewise, Wherley only clearly exhibited one clue on the one-leg-stand test, in that he held his position for 28 rather than 30 seconds. The court stated:  "Is it close to succeeding, yes. Is it, no. So it's still a clue." The court disregarded the trooper's claim

8

that Wherley raised his arms away from his body to balance because that was not verified by the video. After pointing out that the trooper did not know how far one must raise one's hands from one's body to demonstrate a clue, the court then deferred to the trooper's contention that Wherley swayed even though no swaying was visible on the video.

The district court also considered the following facts that cut against probable cause in analyzing the totality of the circumstances: Trooper Dilks did not observe Wherley commit any traffic offenses or driving errors; Wherley did not exhibit slurred speech or balance problems; Trooper Dilks claimed that Wherley failed two of the field-sobriety tests, but the court's review of the video did not confirm the trooper's testimony that Wherley actually failed both tests; the trooper was not able to provide accurate standards for the field sobriety tests regarding how far one must raise one's arms away from the body to constitute a clue or how far one must deviate from vertical to be swaying; the trooper did not know the protocols for the PBT. The court referred to these deficits as "surprising ignorance." The trooper also inaccurately said the weather was clear at the time of the stop "when it was obviously overcast and cloudy."

The district court acknowledged that the decision as to probable cause was "really about as close as it could be. If you knocked out any of those other [*i.e.*, the announced] factors, I don't think you would have had probable cause to arrest in this case."

We agree this was a close case under the district court's analysis. We must, though, disagree with the conclusion it reached. The State did not bear its burden to demonstrate probable cause to believe that Wherley was guilty of DUI under K.S.A. 2012 Supp. 8-1567, *i.e.*, that alcohol consumption rendered Wherley incapable of safely operating a vehicle or caused his BAC to be greater than .08. We make that finding because the district court erroneously gave improper weight to clues it observed during the SFSTs even though, as it acknowledged, the State did not prove that Wherley failed each test. Thus, we "knock out" the clue-based factors that the district court included in

9

its probable cause calculus. Without those, probable cause is, as the district court noted, lacking.

After the district court made its decision in this case our Supreme Court was called upon to determine the admissibility of HGN evidence. See *City of Wichita v. Molitor*, 301 Kan. 251, 341 P.3d 1275 (2015). Trooper Dilks administered that test to Wherley but the State did not attempt to introduce into evidence the test results. The *Molitor* court held that the reliability of HGN testing to determine the level of alcohol intoxication had not been scientifically validated such that it could pass muster under the *Frye* test. See 301 Kan. 256-57, 258-64. The *Molitor* court thus held that HGN evidence is inadmissible until the State has established its reliability in a Kansas district court. 301 Kan. 251, Syl. ¶ 2.

In its analysis the *Molitor* court explained the reliability difference between the HGN test for level of intoxication and the NHTSA [National Highway Traffic Safety Administration] SFSTs, two of which (the walk-and-turn and the one-leg-stand tests) were administered in this case to Wherley:

> "In contrast [to the HGN test], the SFSTs were developed by the NHTSA after both laboratory studies and field studies, from which clues were identified and a scoring criteria developed that would provide an objective assessment as to the probability that the driver's alcohol concentration was at an unlawful level (.10). See Rubenzer, The Standardized Field Sobriety Tests: A Review of Scientific and Legal Issues, 32 Law & Hum. Behav. 293 (2008). For instance, the arresting officer in the *Shadden* case testified at trial that if a driver exhibits two clues, he or she fails the SFST, creating a 68% probability that the driver's concentration of alcohol is .10 or more. *State v. Shadden*, 290 Kan. 803, 806-07, 235 P.3d 436 (2010). In other words, SFSTs are alleged to result in an objective assessment of the level of alcohol in a driver's body, rather than just the presence of alcohol in the body.

"Granted, the officer here testified that Molitor ran into or onto the curb while stopping his vehicle. Obviously, evidence of unsafe driving can suggest intoxication. But that alleged lapse of coordination must be viewed in conjunction with what followed. After stopping the vehicle, Molitor spoke without slurring his words, produced his identifying documents without difficulty, exited and proceeded from his vehicle without losing his balance, and, most importantly, passed the two admissible SFSTs. In other words, under the totality of circumstances, one could not reasonably suspect that Molitor's balance was impaired by alcohol to the point of being legally under the influence of alcohol.

"Moreover, in *Pollman*, this court set a low bar for the observable indicia of intoxication that can support reasonable suspicion, noting only the smell of alcohol and the driver's admission to having drunk alcohol, in addition to the acts leading to the criminal obstruction of official duty charges. *State v. Pollman*, 286 Kan. 881, Syl. ¶ 7, 190 P.3d 234 (2008). But here, the subjective observations which might suggest to Officer Diaz that Molitor was illegally intoxicated were offset by the objective indications that he was not. Indeed, if Molitor had failed the objectively scored SFSTs, one would suspect that the State would be arguing that the officer's trained observations were corroborated by the psychomotor testing.

"Curiously, the panel [*Molitor* reversed a decision by the Court of Appeals] padded its description of the intoxication indicia by referring to the one clue on each SFST to which the officer testified. But the officer admitted that Molitor passed the tests, and *we have nothing in the record which would tell us what one clue reveals about a person's alcohol concentration level. Indeed, '[s]everal studies suggest that cut-off scores are set too low on the psychomotor SFSTs,' and one study 'found that over 50% of drivers at .00% BAC failed Walk and Turn.' Rubenzer, 32 Law & Hum. Behav. at 297. The panel should not have deviated from the criteria and scoring of the NHTSA's standardized testing model to glean reasonable suspicion of DUI from a successful completion of the admissible SFSTs.*" (Emphasis added.) *Molitor*, 301 Kan. at 267-68.

The quantum of proof at issue in *Molitor* was reasonable suspicion: The State relied in part on the HGN to demonstrate the reasonable suspicion of DUI necessary to

support a request that a driver submit to a PBT. The bar for reasonable suspicion is lower than what is required to demonstrate probable cause, as reasonable suspicion can arise from information that is less reliable than that required to show probable cause. See 301 Kan. at 257-58.

We further note that Molitor passed the walk-and-turn test because he exhibited only one clue. Likewise, he passed the one-leg-stand test, again exhibiting only one clue. Here the district court determined that Wherley passed the walk-and-turn test, but it included the faulty turn clue as a factor indicating intoxication in its totality of the circumstances assessment. The district court found one clue present on the one-leg-stand test, in that Wherley's leg came down 2 seconds early. The district court rejected the trooper's claim that Wherley used his arms for balance. However, it appears to have included in its totality of the circumstances assessment Wherley's alleged swaying, even though such could not be detected on the video, the trooper stated the criteria for swaying was 2 inches of deviation from vertical and then, when pressed, admitted he did not know how much deviation constituted a clue.

The reason NHTSA's field tests are admissible is because they are, in fact, "standardized" both with regard to the manner of their administration and the criteria the officer is to apply to determine scoring. As the *Molitor* court points out, passing an admissible SFST with one clue present tells a court nothing meaningful about the level of the test subject's alcohol concentration. To paraphrase the *Molitor* court, troopers, officers, attorneys, and courts should not deviate from the criteria and scoring of NHTSA's standardized pass-fail testing model to glean probable cause of DUI based on the presence of one clue from an otherwise successful completion of an admissible SFST.

Likewise, those admissible SFSTs require that they be administered by officers who appreciate the criteria and scoring standards NHTSA mandates in order to determine whether a clue is present and whether enough clues are present to reliably justify a test

12

failure finding. Again, that is because only the full test, not just an isolated clue from the test, can quantify a level of intoxication. Here, the district court bemoaned Trooper Dilks' "surprising ignorance" regarding SFST protocols. Nevertheless, it accepted as a clue the trooper's assessment that Wherley improperly swayed during the one-leg-stand test even though the court could not see the swaying on the video and the trooper could not specify how far one must sway to constitute a clue.

The district court erred as a matter of law when it deviated from the criteria and scoring of NHTSA's standardized testing model to glean probable cause of DUI based on the presence of one clue from Wherley's otherwise successful completion of the walk-and-turn test. To the extent that the district court found that Wherley failed the one-leg-stand test because he exhibited two clues, that finding is not supported by substantial competent evidence. The State did show that Wherley was 2 seconds short of successfully standing on one leg for 30 seconds, which constituted a clue. However, there is nothing in the record to support an objective finding that Wherley swayed to a degree that exceeded the swaying limit mandated by the testing and scoring criteria from NHTSA's standardized testing model. To the extent the district court gleaned probable cause evidence of DUI based on the presence of one clue from Wherley's one-leg-stand test, the court erred as a matter of law because Wherley did not fail the test.

The facts supporting probable cause that remain do not constitute probable cause. The manner in which Wherley pulled over only supported probable cause, according to the district court, "a little tiny bit." The odor of alcohol, the admission of drinking the previous night, and the delay in producing proof of insurance support probable cause. But as the district court said, they are not adequate for probable cause in and of themselves, and they certainly are not in the totality of the circumstances that includes Wherley's observed competent and safe driving, his unimpaired speech, the lack of evidence of watery and/or bloodshot eyes, no observable problems with balance, his passing of one SFST and a lack of proof that he failed the other. See *Pollman*, 41 Kan. App. 2d 20, Syl.

13

¶¶ 4-5, 204 P.3d 630 (2008); *City of Norton v. Wonderly*, 38 Kan. App. 2d 797, Syl. ¶¶ 7-8, 172 P.3d 1205 (2007), *rev. denied* 286 Kan. 1176 (2008).

Because the district court erred when it found probable cause and denied Wherley's motion to suppress, we reverse and remand with directions that Wherley's conviction of DUI be reversed, his sentence vacated, and his motion to suppress granted. In light of this dispositive decision it is not necessary that we separately consider Wherley's claim that the evidentiary breath test was improperly administered.

Reversed and remanded with directions to reverse Wherley's DUI conviction, vacate his sentence, and grant his motion to suppress.