NOT DESIGNATED FOR PUBLICATION

No. 114,851

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PAINE TAYLOR,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed August 12, 2016. Reversed.

*Jeremiah L. Platt*, of Clark & Platt, Chtd., of Manhattan, for appellant.

*Donald J. Cooper*, of Kansas Department of Revenue, for appellee.

Before MALONE, C.J., HILL and ATCHESON, JJ.

*Per Curiam:* Before asking for a blood-alcohol test in the hospital after a car accident, an investigating law enforcement officer must have reasonable grounds to believe the driver was driving under the influence of alcohol. Because of the scant evidence available to the law enforcement officers here, we hold that they lacked reasonable grounds to believe that Paine Taylor was under the influence of alcohol when he had driven his truck that was involved in a one-car accident. Thus, we reverse the district court's affirmance of the administrative suspension of Taylor's driving license.

1

After a hearing officer affirmed the suspension of Taylor's driving license, he sought judicial review, arguing that the law enforcement officers lacked reasonable grounds to believe he had been operating his vehicle under the influence of alcohol and, thus, there was no reason to ask for a blood-alcohol test.

*After his pickup truck rolled, Taylor's blood was tested at the hospital.*

At the district court trial, Kansas Highway Patrol Trooper Adam Barta testified that he reported to the scene of a single-vehicle accident in late November 2014. A truck had left the roadway, broken through a guardrail on a bridge, traveled down the embankment, crossed over a creek, and flipped onto its roof after striking the opposite embankment. It came to rest almost 500 feet from where it left the road. Debris from the overturned truck was scattered at the scene.

The first law enforcement officer on the scene was Deputy Sheriff Hans Hanson who was already present when Barta arrived. Barta spoke with Hanson and some emergency medical personnel at the scene but not to Taylor. The emergency medical personnel took Taylor to the hospital about 5 minutes after Barta arrived. Barta walked along the path taken by the truck, finding loose objects he believed had come from the truck. These included tools, chains, exploded beer cans, and one can of beer that had been opened by the tab. The truck itself smelled of alcohol.

The weather on the evening of the accident was chilly, misty, and foggy. Considering the nature of the accident and the beer cans, Barta thought that the accident was alcohol-related. So he asked Hanson to go to the hospital, visit with Taylor, and determine if a blood draw would be needed for an alcohol test. Barta did not search the cab of the overturned truck for alcohol containers but only glanced in the cab to ensure no passengers were stuck inside. Barta remained at the crash scene for over an hour before

2

going to the hospital. He was not present when Hanson spoke with Taylor about a blood-alcohol test.

Deputy Hanson testified that he had been trained to detect impaired drivers. On the evening of the accident, he had to drive more carefully due to the fog and mist. Emergency medical personnel were already at the scene of the accident when he arrived. Taylor was sitting in the passenger seat of another vehicle getting medical treatment when Hanson approached Taylor. Hanson could smell alcohol. When Barta arrived, Hanson told him that Taylor was the only person involved and that the vehicle smelled of alcohol. Barta told him to go to the hospital and speak with Taylor. Hanson believed that it was up to him to determine whether implied consent would be required to procure a blood draw.

When he entered Taylor's treatment room at the hospital, Hanson smelled the odor of alcohol. Because Taylor was not completely coherent, Hanson could not immediately speak with him about the blood-alcohol test. Hanson waited while Taylor was being treated. After that, he approached to within 3 feet of Taylor's face, who still smelled of alcohol. Hanson then read the DC-70 implied consent form to Taylor. The first time he read the form, Taylor did not answer because he was still in and out of consciousness. About a half-hour later, Hanson made a second request and Taylor consented to a blood-alcohol test. Hanson confirmed that the smell of alcohol and the facts of the accident established the basis for requesting the blood-alcohol test. The test revealed a blood alcohol concentration of .16.%

On cross-examination, Hanson stated that he saw debris around the truck at the accident scene but could not remember what the debris was. He had looked inside the truck but only for other passengers.

At trial, Taylor argued that Barta and Hanson lacked reasonable grounds to believe that he was operating the truck under the influence of alcohol, given the weather conditions, Hanson's lack of awareness of the beer cans, and the irrelevance of Barta smelling alcohol in Taylor's room after Taylor gave consent for the blood-alcohol test. He contended that the mere odor of alcohol and the fact that there was an accident were not sufficient grounds to ask for testing. He sought to distinguish the facts of this case from those in *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 233 P.3d 286 (2010).

The district court concluded that Hanson smelled alcohol when Taylor was receiving treatment in a vehicle after the accident. The court also found that Barta saw beer cans at the scene but no alcohol containers actually in the truck. The court found that the two officers' observations, even when considering the likelihood of an accident on a misty and foggy night, provided reasonable grounds to request the blood-alcohol test, especially when the smell of alcohol was verified to be coming from Taylor at the hospital.  The district court affirmed the hearing officer's decision upholding the suspension of Taylor's driving license.

*A review of the rules is helpful at this point.*

When a district court has a trial in an appeal of an administrative suspension of a driving license, this court will generally review the district court's decision under a substantial evidence standard. Under that standard, we will determine whether substantial evidence supports the district court's decision but will not consider other evidence that might support a different result as long as sufficient evidence supports the district court's decision. See *Martin v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 1, 5, 163 P.3d 313 (2006); see *In re Estate of Antonopoulos*, 268 Kan. 178, 193, 993 P.2d 637 (1999).

When an issue involves a legal determination based upon undisputed facts, such as in this case, where the issue is whether an officer had reasonable grounds to request a

4

blood-alcohol test, our review must not only consider those undisputed facts, but be made without deference to the district court's conclusion. *State v. Jones*, 270 Kan. 526, 527, 17 P.3d 359 (2001).

Under K.S.A. 2015 Supp. 8-1001(b)(1)(B)(2), Hanson was required to seek a blood or breath test if he had reasonable grounds to believe that Taylor was driving under the influence of alcohol, and an accident causing personal injury or death occurred. Here, only the reasonable grounds to believe Taylor was under the influence of alcohol is at issue. It is well established that the determination of reasonable grounds is similar to a determination of probable cause to make an arrest. *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 775, 148 P.3d 538 (2006).

*A prior case gives us guidance.*

In *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 290 P.3d 555 (2012), our Supreme Court held that under the facts of that case there was insufficient evidence to establish probable cause to arrest Sloop for driving under the influence. The court reversed the suspension of his driving license because Sloop's arrest was invalid. 296 Kan. 13, Syl. ¶ 6. Sloop's breath smelled of alcohol; he had bloodshot and watery eyes; he admitted to having one beer earlier in the evening; and he was stopped in the early morning hours.

In contrast, here, Taylor was involved in a one-vehicle accident in foul weather. Both officers testified that it was foggy and misty. Deputy Hanson stated he had to drive more cautiously than normal due to those weather conditions. Taylor was in need of emergency medical treatment at the scene and was transported to the hospital because of the accident. There was an odor of alcohol about his person. Because he was in and out of consciousness at the hospital, it took more than one attempt to get him to agree to a

5

blood-alcohol test. The beer cans at the accident scene burst due to impact, and there was one open can of beer.

If there was insufficient evidence for probable cause in *Sloop*, there is even less evidence of impairment due to alcohol here. The inclement weather, the burst (not open and drained by drinking) beer cans, and the lack of evidence of impairment due to alcohol consumption such as slurred speech and bloodshot eyes all lead us to conclude there is no probable cause here. Basically, all that these two officers could say was that Taylor smelled of alcohol and had been in an automobile accident. That is not enough. Just as in *Sloop*, there is no real evidence of impaired driving here. The accident could have been the result of poor driving conditions due to inclement weather. Taylor's odor of alcohol could have come from the exploding beer cans during the overturn of the truck.

It takes more than the smell of alcohol to justify a stop of a defendant. In *City of Hutchinson v. Davenport*, 30 Kan. App. 2d 1097, Syl. ¶ 3, 54 P.3d 532 (2002), the court ruled that the smell of alcohol on the defendant's breath when he walked past an officer, "without more, did not establish a reasonable suspicion that justified the officer later stopping defendant when he saw defendant driving a car absent some indication that defendant was intoxicated or too impaired to drive."

The Kansas Department of Revenue cites *Poteet*, 43 Kan. App. 2d 412. In *Poteet*, a panel of this court concluded that the facts of a single-vehicle accident and the reported odor of alcohol were sufficient to establish reasonable grounds for an officer to request a blood-alcohol test. 43 Kan. App. 2d at 417. In that case, the driver lost control of a vehicle and drove off-road through a field and a barbed-wire fence, ultimately ending up with the vehicle on its side. The *Poteet* decision used a definition of "probable cause" that has since been disapproved, but its identification of relevant facts in a reasonable grounds determination is still good law, as long as one does not rely on the "probable cause definition."

6

The *Poteet* court, in upholding the request for a blood-alcohol test, found that the following factors suggested that Poteet was driving while impaired from alcohol:

- the odor of alcohol;
- the fact that Poteet drove through a field and a barbed-wire fence; and
- the fact that she lost control of her car so that it rolled onto its side. 43 Kan. App. 2d at 417.

*Poteet* presents a much different set of facts than exists in this case. There is no report of foul weather in *Poteet* as there is here. We must follow the ruling of our Supreme Court in *Sloop* and hold that there is insufficient evidence that would create reasonable grounds for an officer to request a blood test under these circumstances.

Reversed.