NOT DESIGNATED FOR PUBLICATION

No. 122,914

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANDREW BURRIS,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed July 2, 2021. Affirmed.

*Julie McKenna*, of McKenna Law Office, P.A., of Salina, for appellant.

*Ted E. Smith*, Legal Services Bureau, of Kansas Department of Revenue, for appellee.


Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.


PER CURIAM: Andrew Burris appeals the district court's decision affirming the administrative suspension of his driver's license. He raises a single challenge—that the officer lacked probable cause to believe he operated a vehicle while under the influence of alcohol. Because there was substantial competent evidence to support the district court's conclusion that Deputy Barr had probable cause to believe that Burris operated a vehicle while under the influence of alcohol, we affirm the district court.

1

On a morning in January 2019, Burris arrived at the Cloud County Law Enforcement Center, in Concordia, Kansas. He was there to conduct a site visit on behalf of his employer, a food services company that provided food service to the inmates there. Upon arrival between 8:45 and 9 a.m., Burris sat inside his vehicle in the parking lot making business phone calls and responding to emails. According to Burris, he also drank three beers from a cooler in the backseat of his vehicle during this time.

After that, Burris went inside the building to meet with Amber Lindberg, the jail administrator, for about 25 to 30 minutes. He then met with Torren Fellows, the food service director, for about 45 minutes. After that meeting, Burris returned to his vehicle to make more calls and emails because he did not have reception on his cell phone inside the facility. While in his vehicle, Burris consumed more beer. By his estimation, he drank five beers in the 30 to 35 minutes he was in his vehicle.

During this time, an elderly gentleman arrived in a truck and parked near Burris' vehicle, but Burris disregarded the man as he exited his vehicle. The man later returned to his truck while Burris was still inside his vehicle. As he approached, Burris rolled down his window to tell the man to drive safely because the roads were starting to get icy.

Upon finishing making calls and responding to emails in his vehicle, Burris went back inside the facility. He and Fellows met with Lindberg in her office and had a work-related discussion about the menu. After that meeting, Burris started walking back to the kitchen with Fellows but was stopped outside Lindberg's office by Deputy Kirk Barr of the Cloud County Sheriff's Office. Deputy Barr had arrived at the jail around 11:25 a.m. after receiving a call from the jail secretary about a complaint that there was a man drinking in a vehicle in the jail parking lot.

Upon initiating contact, Deputy Barr noticed a "little" odor of consumed alcoholic beverage emanating from Burris. When asked if he had consumed alcohol in the parking lot, Burris repeatedly denied having done so but said he had been drinking a bottle of water. At one point, he told Deputy Barr that he had consumed four beers the previous evening. Burris first denied having beer in his vehicle, but quickly admitted there was beer in the cooler in the backseat.

Burris agreed to a take preliminary breath test (PBT), which he failed. Deputy Barr decided to administer several field sobriety tests, during which Burris showed several signs of impairment. On the walk-and-turn test, Burris lost his balance, missed the heel-to-toe, stepped off the line, made an improper turn, and took the wrong number of steps. On the one-leg stand test, Burris used his arms to balance and was hopping.

Deputy Barr decided to arrest Burris and administer the implied consent advisories. The results of an evidentiary breath test showed Burris had a blood-alcohol concentration of 0.134. Deputy Barr then completed and provided Burris with a certification and notice of suspension form informing him that his driver's license was being suspended for failing a breath test.

Burris formally requested an administrative hearing, and the administrative hearing officer affirmed the suspension of his driving privileges. The hearing officer found Deputy Barr had reasonable grounds to believe Burris had operated a vehicle while under the influence of alcohol because Burris had denied consuming alcohol that morning or while in the vehicle but admitted having four drinks the night before.

Burris timely petitioned for judicial review, arguing Deputy Barr lacked reasonable grounds to believe he operated a motor vehicle while under the influence of alcohol. According to Burris, there was no basis to justify his detention because he never

operated or attempted to operate his vehicle after consuming beer in the parking lot. The district court conducted a hearing, at which Burris and Deputy Barr testified.

At the hearing, Burris acknowledged that he repeatedly denied that he was drinking in his vehicle when questioned, but says he later admitted to doing so. Burris could not recall whether that admission occurred before or after the sobriety testing or breath test. Deputy Barr admitted at the hearing that he never physically saw Burris operate the vehicle but had reviewed security footage that showed Burris arriving and staying in his vehicle before entering the facility. He also testified at the hearing that he noticed a cooler in Burris' vehicle when he arrived that morning. After Burris admitted to there being beer in that cooler, Deputy Barr explained to Burris he "didn't understand why it wouldn't be true" that Burris had consumed alcohol in the parking lot that day. Yet Burris continued denying that he consumed alcohol in his vehicle in the parking lot.

At the close of the hearing, the district court judge opined the case was "an unusual one." The court denied Burris' petition and affirmed the suspension of his driving privileges. The court explained that "given those very specific facts of this case," it was a reasonable inference for Barr to make that Burris was impaired when he drove to the parking lot because Burris had repeatedly denied drinking alcohol after his arrival.

Burris timely appealed.

ANALYSIS

Burris argues the district court erred in concluding the officer had reasonable grounds to believe he operated a vehicle while under the influence of alcohol. Although Burris focuses on his testimony before the district court that he began drinking only after his arrival, the primary dispute here is whether it was reasonable for Deputy Barr to infer

4

Burris drove his car to the jail while intoxicated based on repeated denials that he drank beer after arriving in the parking lot.

*Our standard of review is substantial competent evidence.*

When reviewing a district court's decision in a driver's license suspension case, appellate courts will determine whether substantial competent evidence in the record supported the district court's factual findings and whether the conclusion derived from those findings is legally correct. *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). Substantial competent evidence is evidence that has both relevance and substance and provides a substantial basis of fact from which the court can reasonably resolve the issues. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015).

When determining whether substantial competent evidence supports the district court's findings, "'appellate courts must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it.'" *Casper*, 309 Kan. at 1220. This court will not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

*An officer must have reasonable grounds to believe Burris operated a vehicle while under the influence of alcohol to support the suspension of his driving privileges.*

Before the Kansas Department of Revenue (KDOR) can suspend a person's driving privileges after a breath test failure, a law enforcement officer must certify that they had "reasonable grounds" to believe that the person operated a vehicle while under the influence of alcohol. K.S.A. 2018 Supp. 8-1002(a)(2). Whether an officer had

reasonable grounds is a mixed question of law and fact. This court will defer to the district court's factual findings but will independently review the ultimate legal conclusion, which is whether reasonable grounds existed in a given case. *Casper*, 309 Kan. at 1213 (citing *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 415, 233 P.3d 286 [2010]).

*We review the implied consent law.*

As a starting point, the Kansas implied consent statute allows an officer to request a person submit to testing under certain conditions. At the time of the breath test request here, the statute provided:

> "One or more tests may be required of a person when, at the time of the request, a law enforcement officer has probable cause to believe the person has committed a violation of K.S.A. 8-1567(a), and amendments thereto, . . . ; and one of the following conditions exists:  (A) The person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance; or (B) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury or death." K.S.A. 2018 Supp. 8-1001(b)(1).

Because the only crime Barr suspected Burris of committing here was driving under the influence (DUI), establishing probable cause to support a request for a breath test simultaneously establishes probable cause for a lawful arrest. See *Casper*, 309 Kan. at 1215. Probable cause exists when an officer has a "'reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime.'" *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012) (quoting *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 656-57, 256 P.3d 845 [2011]). Evaluating probable cause requires looking at the totality of the circumstances and "giving consideration to 'the information and fair inferences therefrom, known to the officer at the time of arrest,' with 'no rigid application of factors.'" *Swank v. Kansas Dept. of Revenue*,

294 Kan. 871, 881, 281 P.3d 135 (2012). We pause to note that until July 2018, the statutory standard to request a breath test was "reasonable grounds to believe" rather than the current "probable cause." See K.S.A. 2017 Supp. 8-1001(b)(1). But the statutory provision requiring law enforcement certification of the results retains the "reasonable grounds" language. See K.S.A. 2018 Supp. 8-1002(a)(1)-(2). That said, because Kansas courts treat reasonable grounds as synonymous with probable cause, there is no material difference between these two standards in this context and they should be considered interchangeable throughout this opinion. See *Swank*, 294 Kan. at 881.

*The facts known to the officer when he arrested Burris for DUI are examined.*

At about 8:45 a.m. Burris drove into the parking lot of the Cloud County Law Enforcement Center. Sometime before 11:04 a.m., a person reported to the secretary at the Center that someone was sitting in a gray SUV in the parking lot in a red hat drinking alcohol. At 11:04, Deputy Barr was dispatched to the jail to investigate. He arrived at about 11:25 a.m. and parked next to the only gray SUV in the parking lot. No one was inside it, but he did notice a cooler behind the driver's seat and a bottle of water in the center console. He did not notice any cans in the vehicle. When he entered the Center, he contacted Burris. When he started talking to him, Barr noticed a little odor of consumed alcoholic beverage. He told his sergeant his observations. The sergeant, who was sitting behind his desk, also noticed the odor.

Barr asked Burris if he had been drinking alcohol in the parking lot, and Burris said he had not. Barr then confronted Burris with the report received about someone drinking in the parking lot and told Burris that he had observed a cooler in Burris' SUV. Burris confirmed it was his vehicle and admitted there was a cooler in the SUV and there was beer in the cooler. Barr asked Burris if he had been consuming alcohol and Burris revealed that he had consumed four beers the night before but denied consuming any alcohol while he was in the parking lot. Barr asked Burris if he was under the influence of

7

alcohol and Burris responded that he was not. Burris told Barr that he had been drinking from a bottle of water in the car.

Barr asked Burris to submit to a preliminary breath test and he agreed. He failed the test. He then asked Burris to complete three field dexterity tests, the horizontal gaze nystagmus, the walk-and-turn test, and the one-leg stand test. On the walk-and-turn test, Burris exhibited 5 clues of impairment—he lost his balance during the instructional phase, he missed heel-to-toe, he stepped off the line, he conducted an improper turn and he took the wrong number of steps. Burris also exhibited signs of impairment on the one-leg stand test. He exhibited two clues of impairment—he used his arms for balance and he was hopping. After his performance on these tests, Barr placed Burris under arrest for DUI. He then administered an Intoxilyzer test, which Burris failed with a result of .134 about three and a half hours after Burris had pulled into the parking lot.

*There was sufficient evidence to conclude that Burris operated a vehicle while under the influence of alcohol.*

Burris contends there was not sufficient evidence to find probable cause that he operated a vehicle while under the influence of alcohol. The crux of his argument is that the district court relied too much on his repeated denials of drinking in the parking lot to infer he drove there while intoxicated, despite the contradictory evidence that showed only post-driving alcohol consumption. In other words, he claims that the officer should not have believed Burris' statements and should have concluded that all alcohol consumption took place in the parking lot.

Burris contends Deputy Barr's investigation consisted only of smelling a little odor of consumed alcohol on Burris and that "[t]here were no other indicators that [he] was under the influence of alcohol." As support he cites *City of Hutchinson v. Davenport*, 30 Kan. App. 2d 1097, 1101, 54 P.3d 532 (2002). In that case, Davenport went to a police

8

station to pick up his daughter when an officer noticed his eyes were bloodshot and detected alcohol on his breath. The officer advised Davenport not to drive, to which Davenport responded that he was on foot. Yet when Davenport left the station, the officer observed him driving away in a vehicle. Despite not observing any traffic violations or other signs of intoxication, another officer pulled Davenport over and arrested him for a DUI. On appeal, our court affirmed the suppression of evidence from what it concluded was an improper stop. 30 Kan. App. 2d at 1100. In reaching that conclusion, the panel held that "[a]lcohol on one's breath alone does not provide a reasonable suspicion to support a stop." 30 Kan. App. 2d at 1101.

*Davenport* is distinguishable for two reasons. First, it involved suppression of evidence in a criminal case. As the Kansas Supreme Court has recognized, an administrative driver's license suspension is a civil matter and "civil and criminal proceedings are wholly separate from one another and are intended to serve two different purposes." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 642, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015).

Second, while *Davenport* holds that the odor of alcohol alone does not provide reasonable suspicion to justify a traffic stop, the court should consider the whole picture or "the totality of the circumstances as viewed by a reasonable police officer" when deciding whether reasonable suspicion exists to request a breath test. *State v. Edgar*, 296 Kan. 513, 524, 294 P.3d 251 (2013) (discussing request to take a PBT test). Although *Edgar* involved the consideration required of sobriety tests that Edgar passed, the results of *unfavorable* field sobriety testing are also considered by the court when making a probable cause determination based on the totality of circumstances. On this point, Burris conveniently ignores his failed PBT and later failures on field sobriety tests that Deputy Barr administered before his arrest and request for an evidentiary breath test. Deputy Barr reflected on his certification form that Burris failed a PBT and testified that Burris

9

showed signs of impairment on the walk-and-turn test and the one-leg stand test. In short, the record contains substantial competent evidence that Burris showed several signs of impairment other than the odor of consumed alcohol before the request for an evidentiary breath test. That said, Burris' impairment is undisputed. Instead, he contends the available evidence did not support an inference that he operated a vehicle while under the influence of alcohol.

Burris frames the question as whether it was reasonable for Deputy Barr to infer Burris had driven to the jail that morning while intoxicated based on his denial of post-driving alcohol consumption. He relies on *Katz v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 877, 256 P.3d 876 (2011). The facts in *Katz* involved an accident near a bar in which an individual, later identified as Katz, backed out of a parking spot into another car and left the scene. The officer dispatched to the accident drove to Katz' apartment to investigate and when questioned, Katz denied consuming alcohol after returning home. The officer administered field sobriety tests, which suggested impairment and led to the officer arresting Katz for DUI and a request for an evidentiary breath test. Katz submitted to the test around 4:30 a.m.—nearly three hours after the accident—and the results showed a blood-alcohol concentration of .203. When Katz sought review of his license suspension, he claimed that he drove home after the accident and participated in drinking games with his friends before going to bed. The district court reversed the suspension order, finding in part that the order was not supported by substantial evidence because the breath test results could not reliably show the amount of alcohol in Katz' system before or when he was operating a vehicle.

On appeal, the panel held that the plain language of the implied consent statute did not require the KDOR to prove that the driver was under the influence of alcohol at the time of operating a vehicle. 45 Kan. App. 2d at 887. In particular, the panel relied on K.S.A. 2009 Supp. 8-1020(h)(2), which sets forth the eight individual issues to be determined in an administrative driver's license suspension case. The panel then

concluded that substantial competent evidence supported the "reasonable grounds" requirement since the arresting officer "had no reason to believe any post-driving alcohol consumption had occurred" because of Katz' repeated denials of post-driving alcohol use. 45 Kan. App. 2d at 894.

The Kansas Supreme Court has cited *Katz* favorably, recognizing that evidence of post-driving alcohol consumption is relevant to the reasonable grounds determination in administrative driver's license suspension cases. See *Swank*, 294 Kan. at 879. The *Swank* court also explained:

> "[A]n officer cannot insulate his or her assessment of the existence of reasonable grounds from review or criticism by a district or appellate court by maintaining a posture of willful ignorance on a suspect's post-driving alcohol consumption. Reasonableness is key. If the situation is such that a reasonable law enforcement officer would investigate, it behooves an actual officer to do so. *This is particularly true when an officer's personal observations of the scene or the suspect suggest the possibility of post-driving alcohol consumption*. Such consumption is a factor to be considered and evaluated, not ignored." (Emphasis added.) 294 Kan. at 880.

To start, Burris relies too heavily on the aspects of his testimony that—through his own admissions, or rather, lack thereof—contained information not available to Deputy Barr when he requested the breath test. In particular, he emphasizes that he testified at the judicial review hearing that he only began drinking after arriving at the jail that morning. Deputy Barr stated that Burris did not admit to consuming alcohol in the parking lot until the administrative review hearing. Regardless of the specific timing, this court has to disregard evidence that conflicts with the district court's factual findings. *Casper*, 309 Kan. at 1220. Like *Katz*, Burris repeatedly denied consuming alcohol after arriving, so his after-the-fact testimony about drinking beer in his vehicle does not factor into the probable cause analysis.

11

And there is no indication here of willful ignorance regarding post-driving alcohol consumption on the part of Barr. There was substantial competent evidence to support Burris' claim that he had nothing to drink after arriving. First, he denied he had anything to drink that morning. Second, he explained the report that he was drinking in the parking lot by stating he was drinking water from a bottle. Barr saw a water bottle in Burris' console. Barr did not see any empty cans of alcohol in Burris' car. Barr noted only a little odor of consumed alcohol coming from Burris. Had he been drinking as heavily as he now claims he was, one would anticipate a stronger odor. And finally, Burris admitted to drinking the night before—which would signify consumption before driving. Depending on how much Burris had to drink the night before and the time he took his last drink, it would not be implausible for him to still be under the influence of alcohol late the next morning. See *Smith v. City of Tuscaloosa*, 601 So.2d 1136, 1140 (Ala. Crim. App. 1992) (retrograde extrapolation of breath-alcohol content 15 hours from driving admissible); *State v. Jensen*, 482 N.W.2d 238, 240 (Minn. App. 1992) (retrograde extrapolation admissible to show blood-alcohol concentration over 11 hours earlier). Simply because one has slept between driving and the last use, does not mean that the blood-alcohol level is automatically within legal limits.

The court acknowledged it was not "an easy case." But we have no trouble finding that the district court had substantial competent evidence to conclude that Deputy Barr had probable cause to believe that Burris operated his vehicle while under the influence of alcohol when he requested that Burris submit to an Intoxilyzer test.

Affirmed.

12